May it please the Court, I'm Eric Weaver, appearing on behalf of Mr. Sessoms. I'd like to reserve two minutes. Also, I'd like to thank the Court for changing the schedule from Monday to today to accommodate my schedule. No problem, Counselor. I think that all the parties agreed, or both parties agreed, that the focus here is whether the question was ambiguous or not. And I think that the focus of this case has to be that an ambiguous request is not a get-out-of-Miranda-free card. It's just as in with a reasonable doubt doesn't mean any possible doubt. Ambiguity doesn't mean any arguable ambiguity. Before we get to that, I'm having a hard time with the application of Davis as to whether it's pre-waiver or post-waiver. Davis was a post-waiver case, and I'm wondering if that makes a difference. Have you given much thought to that? Well, to tell you the truth, I have not given much thought to that. I do note that in the recent case of Burgess v. Tompkins, which is otherwise inapplicable, says that there's no principal difference in Fifth and Sixth Amendment cases on the question of ambiguity. Well, again, it's not the question of ambiguity. It's the question, I guess, of timing. In other words, if the right to counsel is triggered by the administration of the Miranda warnings and then the invocation of the right, and then we get into the question of whether or not the request is ambiguous, that's one thing. If, on the other hand, the Supreme Court case law draws a line between pre-Miranda invocation, and I'll assume for purposes of my hypothetical that it's an unambiguous request for counsel, under the current state of Supreme Court precedent, may the officers nonetheless do what the Sacramento detective did here and go ahead and give a full and effective Miranda warning and, once given, obtain a valid waiver when Mr. Sessom says, let's talk? Well, I think if he requested his counsel, I'm not sure of the answer to that, and I would be happy to submit a supplemental brief on that question, but I think that that's not exactly what happened here. What happened is he asked for his attorney. They stall him. They give him a whole list of reasons why he shouldn't invoke an attorney. But that all happened before they ever administered the Miranda warnings. Right, but after he asked for his counsel. Counseling is supposed to stop when he asks for counsel. Well, that's the question under Davis. Well, I think that under Edwards, when there's a clear invocation of counsel, it's hard to stop that. But Edwards is a post-administration of Miranda warnings case. Okay. Well, that's a question I'll have to ask the lead of the court to submit. Well, if we want some additional briefing, we'll ask for it. Right, right. I think in terms of the ambiguity, the decision of the district court and their respondent's brief focuses a lot on a reasonable police officer and not what this particular police officer understood. I think that this particular police officer, Detective Woods, certainly qualifies as a reasonable police officer. He's been a veteran for 32 years. He testified that he conducted over 1,000 interrogations. So if there's an indication that he understood that Sessoms was asking for an attorney, then I think that's the standard of what a reasonable police officer would understand. It says that, that you look at the individual characteristics of the questioner. Well, you look at the totality of the circumstances. Right. And the totality of the circumstances include, I believe, the response of the police officers. If the police officers objectively understand that he's asking for an attorney, to allow them to then escape their obligation to read him his rights and give him the opportunity just because there's some theoretical ambiguity, that rewards a police officer who's very seasoned and very sharp, who I think Detective Woods clearly was, who can say, oh, wait, he's asked for his attorney, but I think this can be construed as an ambiguous request, and so I'm going to ignore him and proceed. And I think that that defeats the purpose. But he didn't – that's – I keep arguing about Davis, but that gets us back to the Davis problem because he didn't – But the next thing he does is he administers Miranda warnings to him before he asks him any questions about the crime. After he lied to him about what the benefits would be of talking to them. Well, I mean, we can both read the transcript. It looked to me like he was actually being pretty honest with him in terms of explaining the consequences of having a lawyer. As I see the sequence, he kind of jumps the gun by saying, my daddy tells me I need to get a lawyer. And so then the police officers go about persuading him, oh, yeah, you don't really need that. And then they give him the Miranda warnings. And after hearing this, oh, you really don't need a lawyer scenario, he says, okay, I understand all my rights. Go ahead. And then later he says, I need to call my daddy. And they won't let him. That's kind of the way I see this whole scenario, which seems to me that they should have stopped. They should have let him call his daddy. And they would, of course, have been a lawyer at that point. Well, I think that I agree with you that they should have let him call a lawyer or call his father. But I also think that what's very significant about that second exchange is it's virtually the same wording that he used at the beginning. And the detective had no difficulty understanding that he was asking to call his father. But counsel, I mean, assuming that Davis applies, Davis tells us that this is an objective inquiry. It's not what was in the mind of the particular police officer. It's what would a reasonable officer have thought. So I think maybe your focus on the wows of the detective may be a little misplaced because it's an objective inquiry that we are to make. Right. But the objective inquiry has to be somewhere there's a reasonable police officer. And a reasonable police officer, how would they understand this question? I would submit that on the facts of this case, there's no more reasonable police officer than Detective Woods. And he definitely understood what he was asking. So are we saying that there's no more reasonable police officer? Well, the record doesn't reflect that he definitely understood. Because if the record reflected that, we'd be in a totally different place. Well, I think that the record is pretty clear. And I think specifically the fact that when he asked for us to call his father in exactly not exactly, but virtually the same language, the officer has no trouble understanding what he's asking for, shows that he understands the phraseology that Mr. Sessoms was using. And he knows what he wants. And he knows that he wanted an attorney. And under Davis, it was supposed to stop at that point. And I think that the district court had problems with exactly that because it struggled. It said that he went right up to the line. I believe he went over the line. But I do think that how can you establish what a reasonable police officer would understand? Well, you look at all the totality of the circumstances, and the circumstances indicate that he clearly understood what he was being asked. I think a rule to the contrary would, as I said, reward clever police officers, which I don't think is the purpose of requiring clear indication. Yeah, the cases have been pretty consistent in saying that the request must be unequivocal. Right. That's the difficulty with the wording that was used by this young man. Okay. I'll save time. A minute and a half. Okay. Very well, counsel. Let's hear from the State. Firestone. Good morning. May it please the Court. Jeff Firestone, representing appellee respondent in this matter. Your Honors, it's the respondent's position that this case is entitled to deference under ADEPA 2254-D1, that there's been no showing that the State court made an unreasonable or contrary application of the United States Supreme Court precedent.  Davis dealt, actually, with a different factual scenario, where the defendant had already been advised of his Miranda rights, and then he made a statement, an ambiguous statement as far as asserting his right to counsel, and there the court held that there needs to be clarification. Counsel, what is the clearly established Federal law that we are to apply in this case from your perspective? Well, if this is a different scenario, looking at it, this is a different scenario than Davis, then there is no clearly established United States Supreme Court precedent directly on point with this issue, because here this dealt with a pre-Miranda statement of a defendant, as opposed to in Davis where it was a post-Miranda advisement statement and post-implication Miranda statement. So, therefore, it can't possibly be contrary to the United States Supreme Court precedent if there is no precedent directly on point as far as its own. Counsel, it's clear that if counsel is requested, you must stop questioning and let the individual get a lawyer. That's the baseline. So then we look at the facts of the particular case to determine whether there was, in fact, such a request. Right. Here, again, we're dealing with a pre-Miranda advisement situation. The words itself are ambiguous. So if you extend Davis's reasoning, if you look at Davis, which, again, dealt with a different situation, but if you extend their reasoning and say that the words must be an unequivocal invocation of a right to counsel, then all questioning must stop. But here we do have an equivocal invocation of a right to counsel. So that's the issue. It's not that the law isn't very clear. It's how do we apply it in particular factual scenarios. Well, we would be making an extension of United States versus Davis because, again, that was a different factual scenario as far as timing goes. With timing, with Davis, my recall is the defendant had already been advised of his Miranda rights, and then during that he makes a statement that could possibly be indicating that he wants to assert his right to counsel. Then that's a different situation here where the defendant hasn't even been advised of his Miranda rights, and so Detective Woods goes through and does advise him of his Miranda rights. Now, his statement that he makes is ambiguous on its face. He says, there wouldn't be any possible way that I could have a lawyer present while we do this. That could mean a number of different things. It could, one, it's a negative way to assert that maybe he doesn't understand he has a right to have an attorney present. And so that's something that the officer needs to clear up. The scenario here is my daddy tells me I should get a lawyer. They try to talk him out of it, and then they know they must give him the Miranda rights, so then they give them to him after talking him out of a lawyer. And so he says, okay, go ahead. And then during the process, he says, I think I better talk to my daddy. Can I make a phone call? And they say, no, that's not possible. Well, I would disagree on that in that the statement he made, what he's saying is someone else asked me to ask you guys to get me a lawyer. It's not the same thing as invoking himself saying, I want to get a lawyer. He's saying somebody else asked me to have you get me a lawyer. So it's unclear. Is he expressing his daddy's desire, or is he expressing his own desire? That's an issue. Okay. Then what they do is they go through, they read him the Miranda advisements, and they find out he's 19, so he's an adult, and he says, well, can I call to ask my dad? Well, again, it's not his dad's decision. They don't have to give him a right to call his father to get his dad's advice. It's up to him whether or not he decides. He's just over the line from a minor to an adult, clearly pretty immature and lacking in understanding. So the issue is ambiguous at that point. Well, he's an adult nonetheless. He's an adult under the law, but, in fact, pretty immature. Maybe not as experienced as some people, but he's been around. He had been arrested before. That doesn't mean anything. The fact that somebody's been arrested, a young man's been arrested before indicates what? The cops picked him up. Well, here, I would agree with that as far as, yeah, it indicates cops picked him up before. But here, his words that he uses and the way he expresses himself throughout doesn't indicate he lacks an ability to understand the words. So he obviously has some maturity. Counsel mentions his politeness. He's respectful to the officers. Now, one thing, Judge says that the officers tried to talk him out of his rights. I disagree. The detective tried to lay it all out for him. And, in fact, the detective said, before you ask any questions, I want to lay out what the charges are, which there's nothing wrong with informing them what the charges are, and told him that most attorneys would tell you not to talk to us, which would be a red flag. Wait a minute. Maybe I shouldn't talk to these guys. Instead, he chooses to talk to them. One thing I wanted to point out in Counsel's reply brief, several different places he notes or he asserts that the officers told him the judge would look favorably on a decision to talk at sentencing and why it was not in his interest to request an attorney. That appears nowhere in the colloquy pre-Miranda. Colloquy. Colloquy. Thank you. That appears nowhere in the pre-Miranda colloquy. Mr. Parson, let me go back to a point. I think Judge Rawlinson asked you whether or not there was any Supreme Court precedent, and I think I heard your answer suggest something along the lines of maybe an Oregon versus Elstad argument where the Supreme Court permitted a confession to come in where the burglar had talked to the sheriff's deputy before Miranda warnings were administered and then confessed after Miranda warnings were given and the Supreme Court upheld the confession. If you didn't say that, that's what you meant to say, right? Is that your argument? It sounds very good. I know you like it, but I'm trying to figure out what your argument is. There was no interrogation that took place before the Miranda advisement. There was no statements that were made that were likely to invoke an incriminatory response. In fact, when the detective told him that he was charged with homicide and burglary and robbery, the same as the other defendants, the detective also told him, wait a minute, we know you didn't do the stabbing, which otherwise had they just told him what the charges were, you would think he would like to say, well, wait a minute, I wasn't involved in the stabbing. So they weren't trying to invoke an incriminatory response. There was no interrogation that occurred pre-Miranda. So that would differ from Oregon versus Elstad. But the California Court of Appeals did rely on Oregon versus Elstad and Davis and Edwards versus Arizona. Do you take issue with the Court of Appeals' reliance on those cases? No, I wouldn't take issue with that. Just off the top of my head on that, I would. Well, the question is whether or not they, A, looked at the right source of Supreme Court law and then applied it in an objectively reasonable manner, right? Right. That's not an unreasonable application of a United States Supreme Court president. So can you answer Judge Rawlinson's question? And with that, we would submit that it's not an unreasonable application of the Supreme Court president and that here the Miranda- So the first question is, was the court correct in relying on Edwards versus Arizona, Davis, and Oregon versus Elstad? Were those the appropriate cases for clearly established law in this area? Yes, because Edwards was that if a defendant unequivocally asserts the right to counsel, he must stop all questioning. And here he was equivocal. So, yes, that was a correct application of Edwards. Davis, it could be a reasonable extension of Davis in that when he does bring up the subject of counsel, it's ambiguous, just like in Davis when after he had been advised of his Miranda, he mentions an attorney, he was ambiguous. And, therefore, you have to look at it from a reasonable objective standard of a reasonable police officer. So, yes. And then Oregon versus Elstad would be that the- I believe the context would be that any harm would have been cured by post-Miranda waivers. Is that how I understand the court is using- I'm not making your argument for you. I'm giving you all the help. Well, looking at that, if any ambiguity was cleared up, because here the officer clearly read him his Miranda rights and there was a clear implication of his right to counsel and his right to silence, he said, let's talk, once he had been fully informed of his rights. Counsel, your time has expired. I think your opponent has about a minute and a half left. Thank you. I have a lot to say in a minute and a half. Although the Attorney General just made my argument in terms of the court of appeal. The court of appeal, if, as your hypothetical, Justice Tallman, assumes it's a clear indication, they have to stop and they have to offer him his attorney. If it's not clear and it's ambiguous, then it is what you do. You look to the reasonably applicable precedent, which would be Davis, and it's a reasonable extension to apply their ambiguity analysis to this case. The ambiguity analysis is would a reasonable police officer think it's ambiguous. There's a lot of factors we've cited which say it's not ambiguous. Well, is it that or are we applying Davis at that point because it is an ambiguous question as to whether he's invoking and to clear up the ambiguity, the detectives clearly advise him of his Miranda warnings and he weighed. But he advised him of his Miranda warnings after a clear, implicit, and very important lie. And the lie was we know that you didn't participate in the murder, implying that somehow his liability is diminished and that if he talks to the police, the judge will take that into consideration. Under California law, the moment he admits he's in the house – Well, can you cite us in the record? Your opponent says that nowhere in the record do they say that. He does say we know you didn't participate. Right. Yeah. But it's the part about the judge will take that into consideration that I think counsel – They say it looks to your – no, it's in there. I could find it. All right. Well, we can check that one out. No, it's definitely in there that he says the judge will look favorably if you cooperate. Yeah, that language is definitely there. And so that is a very important lie because to an unsophisticated person – he didn't even know what the word currency was. The police had to explain that to him. Very unsophisticated person. He assumes, oh, well, if I cooperate, I'll get a break. He gets no break. At the moment he admitted he's in the house, he's in for LWOP at age 19, an unsophisticated person. Counsel, your time has expired. Okay. Thank you very much. Thank you very much. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson